UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| **EVAN NEALE,**<br>a Washington resident,<br><br>**Plaintiff,**<br><br>v.<br><br>**BNSF RAILWAY COMPANY,**<br>a Delaware corporation,<br><br>**Defendant.** | Case No.<br><br>**COMPLAINT** |

COMES NOW Plaintiff Evan Neale ("Plaintiff" or "Mr. Neale"), by and through his undersigned counsel, and for his cause of action against Defendant BNSF Railway Company ("Defendant" or "BNSF"), a Delaware corporation, states and alleges as follows:

### I.  PARTIES AND JURISDICTION

1. At all material times, Mr. Neale was, and remains, a resident of the State of Washington.

2. At all material times, Defendant was and is a corporation duly organized and existing under the laws of the state of Delaware, and was operating a system of railroad tracks in

COMPLAINT - 1

**ROSSI VUCINOVICH P.C.**
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

the State of Washington and other states, and that said system included and includes lines of track in the Western District of Washington, where this action is filed and where the actions at issue herein are alleged to have taken place.

3. This action is based upon federal question jurisdiction arising out of 29 U.S.C. § 2615, which defines prohibited acts under the Family Medical Leave Act ("FMLA") and 28 U.S.C. § 1331.

4. Claims under the Washington Law Against Discrimination are subject to the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 and this Court's original jurisdiction over the FMLA action.

5. The action is timely commenced under 29 U.S.C. § 2617(c) and RCW 49.60.

6. Venue is proper in this Court under 29 U.S.C. § 2617(a)(2) and 28 U.S.C. § 1391(b)(2), as a substantial portion of the events leading to this cause of action occurred in the Western District of Washington.

## II.   FACTUAL ALLEGATIONS

7. Mr. Neale realleges and incorporates by reference the allegations contained in paragraphs 1 through 6 of this Complaint as though fully set forth herein.

8. Mr. Neale was a Conductor working on behalf of BNSF for around or in excess of 8 years prior to March 25, 2021.

9. He was illegally discharged by BNSF on or about March 25, 2021 in retaliation for his legal and appropriate use of intermittent FMLA leave for severe allergies that had been specifically approved, repeatedly, by BNSF.

10. Mr. Neale followed all procedures set forth by BNSF to obtain approval for intermittent FMLA leave for his severe allergies.

COMPLAINT - 2

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

11.     BNSF initially approved Mr. Neale's intermittent FMLA leave not later than October 2018, and possibly in the years prior.

12.     BNSF again approved Mr. Neale's intermittent FMLA leave following reassessment each year thereafter, and Mr. Neale had been approved for such leave for his severe allergies through July 29, 2021 at the time of the actions at issue in this lawsuit.

13.     BNSF was aware through the submitted and approved FMLA paperwork that Mr. Neale suffered from irregular and severe bouts of allergies year-round that restricted his ability to work safely as a Conductor.

14.     BNSF was aware that allergy flare-ups for which Mr. Neale was approved for FMLA intermittent leave included physical and sensory impacts to his eyes (causing blurry, watery, and itchy eyes), his nose (causing congestion and runny nose), and his breathing (causing him to have asthma).

15.     Mr. Neale's allergies also impacted and impact his mental processing (making it difficult to concentrate due to the many other impacts of his allergies).

16.     Simply put, Mr. Neale feels terrible when he has a flare-up of allergies.

17.     In order to address his allergy flare-ups and reduce his symptoms associated therewith, Mr. Neale medicates with diphenhydramine.

18.     Though the medication utilized by Mr. Neale to address the allergy flare-ups, diphenhydramine (the generic name of Benadryl), reduces the symptoms of Mr. Neale's allergies, it also has side effects, including impacting Mr. Neale's physical and mental acuity and making him feel less alert and awake.  These are known side effects of the medication.

19.     Mr. Neale's medical condition associated with his severe allergies constituted and constitutes a disability, as it constitutes diagnosed sensory, physical, and mental impairments.

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

20. At least some of these impairments were known by BNSF to exist in Mr. Neale as a result of years of the diagnosed condition and the repeatedly approved intermittent FMLA leave and all the paperwork in BNSF's files regarding same.

21. In February 2021, Mr. Neale had a significant bout of allergies.

22. Mr. Neale took diphenhydramine at that time for those allergies.

23. In addition to the side effects discussed above, diphenhydramine is a medication on BNSF's list of medications that precludes an employee of BNSF to work in the role of Conductor for a minimum of 8 hours after the last dose taken.

24. Mr. Neale timely called in to lay off of work on February 7, 2021 for approved FMLA leave for his condition, as well as for his necessary use of medication in connection with treating the approved FMLA condition.

25. BNSF, through surveillance agents, surreptitiously observed Mr. Neale during his FMLA leave, but the surveillance personnel were not made aware of his medical condition or of any medication he had taken to address that condition.

26. BNSF, of course, had full knowledge of the condition for which Mr. Neale had been approved to take FMLA leave, so it was aware that he had reported, through taking FMLA leave, that he was experiencing a bout of severe allergies at the time of the surveillance.

27. The surveillance personnel hired by BNSF did not ask Mr. Neale any questions about his condition or the medication taken to address his condition.

28. The surveillance personnel had no way to know if Mr. Neale's actions were consistent with his medical condition or with his having taken medication for that condition, as BNSF did not share any information about his condition with them and the surveillance personnel did not seek out additional information about his condition.

COMPLAINT - 4

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

29. BNSF decided to hold an investigation of Mr. Neale based on the surveillance with an allegation of abuse of FMLA leave and dishonesty.

30. During the investigation, BNSF again failed to bring up what it already knew about Mr. Neale's condition—namely, that he suffered from intermittent severe allergies and that it had approved FMLA intermittent leave to address flare-ups of that condition.

31. No information was brought forward by BNSF during the investigation about the medical condition BNSF had approved, repeatedly, for FMLA leave. This is despite the fact that BNSF had full knowledge of what it had approved and the reason Mr. Neale had sought leave on February 7, 2021.

32. Instead, BNSF wrongly misinterpreted Mr. Neale's actions on that day under surveillance as being inconsistent with FMLA leave generally, as opposed to assessing it against Mr. Neale's specifically approved FMLA leave and use of medication, despite BNSF's knowledge of the precise medical condition for which BNSF itself had approved Mr. Neale to take FMLA leave.

33. The hearing officer at the investigation hearing intentionally blinded himself to the information that BNSF had about Mr. Neale's approved FMLA leave in order to proceed with the investigation.

34. There was no proof at all in the hearing that Mr. Neale failed to stay within the guidelines that he had been approved for under FMLA by BNSF, since BNSF did not assess whether he had actually taken FMLA leave for allergies, had actually been suffering from allergies, and had actually taken medication for allergies that was on the proscribed list for work.

35. BNSF acknowledged in the hearing that FMLA is authorized so long as "the layoff is due to the serious health condition" for which Mr. Neale was approved.

COMPLAINT - 5

36. No one offered evidence that the layoff was other than for the severe allergies for which Mr. Neale had received approved FMLA leave.

37. In fact, the only evidence on that front was from Mr. Neale himself, repeatedly affirming that he had taken approved FMLA leave for his severe allergies.

38. The activities cited by BNSF as purportedly inconsistent were not inconsistent with Mr. Neale's approved FMLA leave or with his having taken medication for that condition.

39. BNSF did not establish that the leave taken by Mr. Neale was other than for his approved FMLA medical condition.

40. Despite the lack of evidence establishing that Mr. Neale had done other than rightfully take his approved FMLA leave for his severe allergies, BNSF terminated Mr. Neale's employment on March 25, 2021.

41. BNSF falsely claimed the termination was for misuse of FMLA and dishonesty.

### III.    FMLA INTERFERENCE/RETALIATION

42. Mr. Neale realleges and incorporates by reference the allegations contained in paragraphs 1 through 41 of this Complaint as though fully set forth herein.

43. The FMLA proscribes actions by an employer to interfere with, restrain, or deny the exercise of rights outlined thereunder. 29 U.S.C. § 2615.

44. Mr. Neale was by all accounts utilizing FMLA leave during the time for which BNSF terminated his employment.

45. BNSF's claims of misuse of FMLA leave ignored the very purpose of the leave that Mr. Neale took, and did so willfully and/or intentionally so as to mischaracterize his use of such leave.

COMPLAINT - 6

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

46. By failing to take material information BNSF had into account in arriving at a decision to terminate Mr. Neale's employment, BNSF improperly and willfully interfered with and denied Mr. Neale's rightful exercise of FMLA rights.

47. By terminating Mr. Neale's employment for the rightful exercise of FMLA rights, BNSF interfered with, restrained, and denied Mr. Neale the proper exercise of his rights.

48. Such actions by BNSF violated federal law, including, but not limited to, 29 U.S.C. § 2615(a) and (b).

49. Mr. Neale has suffered substantial damages in connection with BNSF's actions, including loss of income and benefits, past and future, and emotional distress. Mr. Neale continues to suffer from the damages wrought upon him by BNSF through its illegal actions, and such damages continue to accrue as a result.

### IV.    WLAD DISCRIMINATION

50. Mr. Neale realleges and incorporates by reference the allegations contained in paragraphs 1 through 49 of this Complaint as though fully set forth herein.

51. Mr. Neale has what is defined as a disability under the Washington Law Against Discrimination. RCW 49.60.040.

52. Mr. Neale was granted intermittent FMLA leave, and such grant was repeatedly reassessed and reapproved by BNSF, for his disability of severe allergies.

53. That granted leave was an accommodation to allow Mr. Neale to perform the job of Conductor despite his disability of severe allergies.

54. A substantial factor in BNSF's decision to discharge Mr. Neale from his employment was his disability of severe allergies.

55. A further substantial factor in BNSF's decision to discharge Mr. Neale from his employment was his exercise of BNSF-approved FMLA leave to address flare-ups of his disability.

56. Mr. Neale has suffered substantial damages in connection with BNSF's actions, including loss of income and benefits, past and future, and emotional distress. Mr. Neale continues to suffer from the damages wrought upon him by BNSF through its illegal actions, and such damages continue to accrue as a result. Mr. Neale has suffered substantial damages in connection with BNSF's actions, including loss of income and benefits, past and future, and emotional distress. Mr. Neale continues to suffer from the damages wrought upon him by BNSF through its illegal actions, and such damages continue to accrue as a result.

## V.   REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered against the above-named Defendant for special and general damages in an amount established by the evidence, together with liquidated damages under the FMLA, all costs and disbursements, attorneys' fees, and other relief the court may deem appropriate.

## VI.   JURY DEMAND

Plaintiff demands a trial by jury on all issues raised herein.

Dated:  March 21, 2023

**ROSSI VUCINOVICH P.C.**

 */s/ C. N. Coby Cohen*
C. N. Coby Cohen, WSBA #30034
*Attorney for Plaintiff*

COMPLAINT - 8